**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JUAN CARLOS PENA BUSTAMANTE, *individually and on behalf of others similarly situated*,

                *Plaintiff*,

-against-

UNO CAFE & BILLIARDS INC. (d/b/a UNO CAFÉ & BILLIARDS), NY CANTAOKE INC. (d/b/a AMOR KARAOKE & BAR) and YANGKEY KIM

                *Defendants.*

15-cv-04192-FB-RML

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

-----------------------------------------------------------------X

Plaintiff JUAN CARLOS PENA BUSTAMANTE ("Plaintiff" or "Juan Pena"), by his attorneys, Michael Faillace & Associates, hereby submits his proposed findings of fact and conclusions of law.

**Plaintiff's Proposed Findings of Fact**

1. The Plaintiff filed this present action in the United States District Court in the Eastern District of New York on July 16, 2015, an amended complaint on February 3, 2016, and a second amended complaint on July 28, 2016.

2. Defendants Uno Café & Billiards Inc. and NY Cantaoke Inc. are domestic corporations organized under the laws of the state of New York. They maintain their principal executive offices at 78-01 Roosevelt Avenue, Jackson Heights, New York 11372. (Joint Stipulation of Fact No. 4)

3.	Uno Café & Billiards Inc. is a pool hall, operating under the name Uno Café & Billiards.  NY Cantaoke Inc. is a karaoke bar, operating under the name Amor Karaoke & Bar. Both businesses are located in the same building, and are connected by an elevator: Uno Café & Billiards is upstairs; Amor Karaoke & Bar is downstairs.  (Transcript of Trial held on March 20, 2018 ("Transcript") at 50:6-8)

4.	Uno Café & Billiards and Amor Karaoke & Bar are both owned by defendant Yangkey Kim.  At Uno Café & Billiards and Amor Karaoke & Bar, at all times relevant to this action, Yangkey Kim: (1) hired and fired employees; (2) paid employees; and (3) managed and supervised employees, including Plaintiff.  (Transcript 5:3-15, Joint Stipulation of Fact No. 6)

5.	Both Uno Café & Billiards and Amor Karaoke & Bar serve prepared food and drinks to customers.  (Transcript 18:24-19:3)

Juan Carlos Pena Bustamente

6.	Juan Pena was employed as a security guard by Yangkey Kim, Uno Café & Billiards and Amor Karaoke & Bar ("Defendants") from approximately 2005 until approximately June 27, 2015.  ("Transcript 6:4-7)

7.	Throughout Juan Pena's employment for Defendants, he was present in the building that housed Uno Café & Billiards and Amor Karaoke & Bar, and was on call simultaneously for both businesses.  If there was a problem with an unruly customer upstairs in the pool hall, he would be notified and would deal with it.  Likewise, if there was a problem downstairs at the bar, he would be notified and would deal with it.[1]  (Transcript 6:16-21, 7:10-12)

---

[1] Plaintiff's primary duties at the pool hall and bar were to manage and, if necessary, remove unruly customers. (Transcript 6:8-15)

8.     From approximately June 2009 to approximately July 2010, Juan Pena worked for Defendants from approximately 10:00 p.m. until on or about 5:00 a.m., six days a week (typically 42 hours per week). (Transcript at 7:13-16)

9.     From approximately July 2010 to approximately December 2012, Juan Pena worked for Defendants from approximately 10:00 p.m. until on or about 5:00 a.m., seven days a week (typically 49 hours per week). (Transcript at 8:22-9:3)

10.    From approximately December 2012 until June 27, 2015, Juan Pena worked for Defendants from approximately 4:00 p.m. until on or about 4:00 a.m., seven days a week (typically 84 hours per week). (Transcript at 9:3-8)[2]

11.    Throughout his employment with Defendants, Juan Pena would take approximately ten minutes during each shift for a cigarette break.  (Transcript at 9:22-10:5)

12.    Juan Pena was not required to record his start and end times, and Defendants never recorded his start and end times.   (Transcript at 9:9-19)

13.    At all times during his employment, Juan Pena was paid in cash.  (Transcript 11:10-11)

14.    From approximately June 2009 to approximately July 2010, Juan Pena was paid a fixed weekly salary of $600 per week.  (Transcript 10:19-11:9)

15.    From approximately July 2010 to approximately December 2012, Juan Pena was paid a fixed weekly salary of $700 per week.  (Transcript 11:4-20)

16.    From approximately December 2012 to approximately June 27, 2015, Juan Pena was paid a fixed weekly salary of $1,050 per week.  (Transcript 11:16-12:6)

---

[2] At this point, Juan Pena's job responsibilities increased along with his hours.  He was tasked with overseeing Defendants' gaming machines as well as performing as a security guard.  (Transcript 23:13-24:12)

17. Juan Pena was paid a flat weekly salary that did not vary when he worked more time per week than usual. When Juan Pena was required to stay later or work a longer day than his usual schedule, his pay was not increased. (Transcript 12:7-10)

18. Defendants did not provide Juan Pena with any written notice of his pay rate or wages. (Transcript 13:8-13)

19. Defendants did not provide Juan Pena with a wage statement upon payment of his wages. (Transcript 13:8-13)

20. Defendants never explained to Juan Pena the basis for his rate of pay, and never discussed overtime pay with him. (Transcript 12:11-12, 14:12-17)

**Plaintiff's Proposed Conclusions of Law**

1. The court has subject matter jurisdiction of this action. 29 U.S.C. § 216(b), 28 U.S.C. § 1337 and 28 U.S.C. § 1331.

2. The claims arising under New York law are so related to the FLSA claims that they form part of the same case or controversy, and are therefore within the supplemental jurisdiction of the court. 28 U.S.C. § 1367.

3. Defendants constitute an enterprise engaged in commerce or in the production of goods in commerce within the meaning of the FLSA because its employees handle and work on goods and materials that have been moved in and produced for commerce, and its corporations had annual gross sales of $500,000 or more. (Joint Stipulation of Fact Nos. 7 & 8)

4. Defendants are thus subject to the minimum and overtime wage requirements of the FLSA. *See* 29 U.S.C. §§ 206, 207.

5. Both the FLSA and the NYLL define the term "employer" broadly for purposes of determining those who bear liability for unpaid wages. *Irizarry v. Catsimatidis*, 722 F.3d 99, 103

(2d Cir. 2013); *see* 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6), 651(6), 190(3); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (emphasizing "expansiveness" of the definition of employer under the FLSA).

6. Under the FLSA, employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). "The Supreme Court has recognized that `broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)). Accordingly, the Supreme Court has "consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Id.*

7. Individual defendant Yangkey Kim is an employer under the FLSA. The testimony and evidence at trial shows that he hired Plaintiff, set his schedule, supervised him, paid and fired him. (Transcript 10:11-18, 16:4-10, 28,:17-19) (Joint Stipulation of Fact No. 6)

8. While the question of whether the same test for employer status applies under the NYLL was left open by the 2nd Circuit in *Irizarry*, *id.* at 117-118, "district courts in this Circuit have consistently interpreted the definition of `employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Ho v. Sim Enters.*, 2014 U.S. Dist. LEXIS 66408, *26 (S.D.N.Y. May 14, 2014); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 940 (S.D.N.Y. 2013).

9. It is undisputed that Defendants were employers of Plaintiff under the FLSA and NYLL.

5

Overtime Pay

10.    Under both federal and New York state law, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek. 29 U.S.C. § 207(2)(C); 12 N.Y.C.R.R. § 146-1.4.[3]

11.    Overtime pay under the FLSA is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay. 29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1).

12.    The regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; 29 U.S.C. § 207(e).

13.    Where an employee receives a straight weekly salary, there is a rebuttable presumption that the salary covers 40 hours worked. Therefore, to determine the regular rate, the weekly salary is divided by 40 hours. *Guallpa v. NY Pro Signs Inc.*, Index No. 11-cv-3133(LGS), 2014 U.S. Dist. LEXIS 77033, *9-*10 (S.D.N.Y. May 27, 2014); *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

14.    Under New York law, the Hospitality Industry Wage Order (effective January 1, 2011) governs how an employee in the hospitality industry's overtime damages are calculated. The Hospitality Industry Wage Order applies in this case. The term hospitality industry includes any restaurant. 12 N.Y.C.R.R. §146-3.1(a). As used in the Hospitality Industry Wage Order:

---

[3] Throughout his employment for Defendants, Plaintiff was on call simultaneously as a security guard for both Uno Café & Billiard and Amor Karaoke & Bar. (Transcript 6:16-21, 7:10-12) Thus, all of the time he spent either working or on call for both businesses is compensable. *See Daniels v. 1710 Realty LLC, No. 10-CV-0022 (RER),* 2011 U.S. Dist. LEXIS 91902 (E.D.N.Y. Aug. 17, 2011*)* ("The U.S. Department of Labor's regulations promulgated under the FLSA provide that '[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'") (citing 29 C.F.R. § 785.17)

> The term restaurant includes any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants.

12 N.Y.C.R.R. §146-3.1(b). Both Uno Café & Billiards and Amor Karaoke & Bar serve prepared food and drinks to customers. (Transcript 18:24-19:3) Accordingly, the Hospitality Industry Wage Order applies after its effective date of January 1, 2011.

15. Under the Hospitality Industry Wage Order, "an employer shall pay an employee for overtime at a wage rate of $1^{1/2}$ times the employee's regular rate for hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. §146-1.4.

16. When an employee at a restaurant is not paid an hourly rate of pay, "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. §146-3.5.

17. Both Plaintiff and Defendants testified that Plaintiff was not paid an hourly rate of pay, but rather was paid on a salary basis. (Transcript 16:24-17:2, 50:22-25, 59:9-13) Thus, under New York law, after January 1, 2011, Plaintiff's regular rate of pay is determined by dividing his weekly wages by 40 hours. The overtime rate is then determined by multiplying the regular rate by 1.5, and the unpaid overtime pay is determined by multiplying the overtime rate by the number of hours above 40 Plaintiff worked in the week.[4]

---

[4] Prior to January 1, 2011, the applicable regulation stated that where an employee is paid by any basis other than an hourly rate, "the regular hourly rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. §137-3.5.

7

Recordkeeping / Burden of Proof

18. An employee-plaintiff under the FLSA bears the burden of proving that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). A plaintiff may meet this burden "through estimates based on his own recollection." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

19. Under the FLSA, employers are required to "make, keep, and preserve" records of their employees' "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Employers must keep payroll records for at least three years and earnings records for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a)(1). Under the NYLL, employers must "establish, maintain, and preserve" detailed weekly payroll records for each employee "for not less than six years." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1; N.Y. Lab. Law § 195, 661.

20. Where an employer has failed to maintain accurate and complete records of the hours employees worked and the amounts they were paid, the plaintiff-employee need only to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997). The burden then shifts to the employer to come forward with any evidence to either show "the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88. If the employer fails to produce such evidence, the court may award damages to the employee, even though the result be only approximate. *Id.* at 688. In the absence of rebuttal by defendants, the employees' recollections and estimates of hours worked are presumed to be correct. *Amaya v. Superior Tile & Granite Corp.*, 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012); *Chao v. Vidtape*, 196 F. Supp. 2d 281 (E.D.N.Y. 2002).

21. Federal law requires employers to "make, keep, and preserve" records concerning the "wages, hours, and other conditions and practices of employment" and authorizes the Department of Labor to issue regulations to enforce these requirements. *See* 29 U.S.C. § 211. Under those regulations, employers are required to maintain payroll records for at least three years, and basic timekeeping and earnings records for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a).

22. New York law requires that employers "establish, maintain and preserve for at least six years weekly payroll records which shall show for each employee: (1) name and address; (2) social security number or other employee identification number; (3) occupational classification; (4) the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10; (5) regular and overtime hourly wage rates; (6) the amount of gross wages; (7) deductions from gross wages; (8) the amount of net wages; (9) tip credits, if any, claimed as part of the minimum wage; (10) meal and lodging credits, if any, claimed as part of wages; (11) money paid in cash; and (12) student classification.." 12 NYCRR §146-2.1(a).

23. Here, Defendants did not keep any records related to Plaintiff's employment. (Transcript 53:8-15) Accordingly, Plaintiff's recollection of the hours he worked and the pay he received should be credited.

24. While the Defendants did use witnesses in an attempt to rebut Plaintiff's testimony, the witnesses were not effective. Indeed, rather than bolstering Defendants, the witnesses actually contradicted Defendants' testimony, and indicated that Defendants' wage violations extend beyond Plaintiff.[5]

---

[5] Defendants' witness, Armando Benavides, a current employee of Mr. Kim, actually testified that Mr. Kim is not paying him overtime. (Transcript 92:6-11)

25. For example, defendant Kim testified that in 2013, after being sued by the Department of Labor, he began tracking his employees' hours with time cards. (Transcript 75:21-76:23) However, three of Defendants' witnesses testified that Mr. Kim began utilizing time cards at his businesses much later, in either 2016 or 2017 (Transcript 104:8-16, 110:8-25, 120:8-21).

26. Mr. Kim's testimony was full of vagaries and contradictions, and was based on hearsay. (Transcript 73:4-12) Mr. Kim testified that Plaintiff was frequently late. However, on cross, Mr. Kim contradicted himself and testified that he did not tell Plaintiff what time to start work. (Transcript 66:23-67:12) Mr. Kim insisted that Plaintiff never worked from 4 pm to 4 am.[6] However, two of Mr. Kim's four witnesses (three of which currently work for him), contradicted him and testified that Plaintiff did indeed work from 4 pm to 4 am (Transcript 86:19-87:4, 107:10-15)

27. The main thrust of the witnesses' testimony was that Plaintiff was frequently late. However, the witnesses were not Plaintiff's managers or supervisors; they were his coworkers, coworkers that Mr. Kim actually testified were not tasked with monitoring Plaintiff's hours. (Transcript 73:10-14) Defendants' failure to keep records should not be tempered by the biased, obscure testimony of Mr. Kim's employees. As such, Plaintiff's testimony should be credited.

28. In an apparent act of desperation, likely due to their failure to keep the required records, Defendants attempted to impeach Plaintiff by asking him about prior convictions. Plaintiff admitted he was convicted of larceny (albeit after his employment with Defendants). Defendants argued that this conviction should bear on Plaintiff's credibility; however, the Court disagreed. (Transcript 41:3-8) The Court was correct. Crimes of stealth, like larceny, do not

---

[6] Plaintiff testified that from approximately December 2012 until approximately June 27, 2015, he worked for Defendants from approximately 4:00 p.m. until on or about 4:00 a.m., seven days a week (typically 84 hours per week). (Transcript 9:3-5)

10

implicate a witness's likelihood to tell the truth. *See United States v. Hayes*, 553 F.2d 824 (2d Cir. 1977) ("The use of the second prong of Rule 609(a) is thus restricted to convictions that bear *directly* on the likelihood that the defendant will *testify* truthfully (and not merely on whether he has a propensity to commit crimes). It follows that crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary, or petit larceny, do not come within this clause."); *USCS Fed Rules Evid R 608,* Interpretive Notes and Decisions at 38 ("Alleged instances of theft are probative of truthfulness or untruthfulness where they involve communicative or expressive dishonesty; here, allegations that two police officers were somehow involved in theft during drug raid was not probative of their truthfulness or untruthfulness") (citing *United States v. Johnson* (E.D. Pa. Aug. 9, 2005), 380 F Supp 2d 660, aff'd, (3d Cir. Pa. Sept. 14, 2006), 195 Fed Appx 52)[7] Plaintiff's larceny conviction is irrelevant and should have no bearing on Plaintiff's testimony.

Spread of Hours Claims

29.     Separate from any other regular or overtime wages, when an employee works more than 10 hours on any given day, the employee is entitled to receive "spread of hours" pay, which is an additional one-hour's pay at the applicable minimum wage rate. 12 NYCRR § 142-2.4(a) (2009). Plaintiff testified he worked over 10 hours per day during his employment with Defendants for the period from approximately December 2012 until June 27, 2015. (Transcript at 9:3-5) There is no evidence in the record suggesting Defendants properly paid an additional hour's pay for these days. Accordingly, Plaintiff was improperly denied spread of hours wages. 12 NYCRR § 146-1.6

Wage Notice and Wage Statements Under the NYLL

---

[7] Plaintiff notes that Defendants do not have entirely clean hands either. As the Court observed, Defendants were running an illegal gambling operation while Plaintiff was in their employ. (Transcript 68:2-10)

30. Under the NYLL, employers must provide employees with wage and hour notices. NYLL § 195(1)(a). Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay. Employees must be provided such notices at the time of hiring and on or before February first of each subsequent year of employment. *Id.* In addition to rate of pay, the notice must inform the employee of the basis of their pay, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; and the telephone number of the employer. An employee who does not receive such notices can recover damages of $50 per day, up to a statutory maximum of $5,000.

31. The employer has the burden of proving compliance with the notification requirements of §195(1)(a). Defendants testified that they did not keep any records of Plaintiff's employment whatsoever. (Transcript 53:12-15) There is no evidence in the record that Defendants ever provided any NYLL compliant wage and hour notices to Plaintiff. Accordingly, Plaintiff is entitled to damages of $50 per week of violation, up to a maximum of $5,000.

32. The NYLL also requires employers to provide wage statements with each payment of wages, which must include, among other things, the rate of pay and basis thereof, and "allowances, if any, claimed as part of the minimum wage." NYLL § 195(3). The wage statement must list the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

33. An employee who does not receive such statements can recover $250 per day of violation, up to a maximum of $5,000. NYLL § 198(1-d). Defendants testified that they did not keep any records of Plaintiff's employment. (Transcript 53:12-15) There is no evidence in the record that Defendants ever provided any NYLL compliant statements to Plaintiff. Accordingly, Plaintiff is entitled to statutory damages of $250 per day, up to a maximum of $5,000. NYLL §198(1-d).

Liquidated Damages

34. The NYLL provides for a liquidated damages award "'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" *McLean v. Garage Management Corp.*, 2012 U.S. Dist. LEXIS 55425 at *21 (S.D.N.Y. April 19, 2012) (quoting NYLL §198(1-a)).[8] This is the same as the FLSA's good-faith standard for liquidated damages.[9] Until April 9, 2011, liquidated damages under New York law were 25% of the unpaid wages. Since April 9, 2011, they are 100% of the underpayments. N.Y. Lab. Law §663(1); *see also Pinovi v. FDD Enters.*, 13-cv-2800 (GBD), 2015 U.S. Dist. LEXIS 89154, *15 (S.D.N.Y. July 8, 2015). In addition to liquidated damages on unpaid minimum and overtime wages, Plaintiffs are also entitled to recover liquidated damages on their spread of hours claims. N.Y. C.P.L.R. §5001; *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp.2d 2d 327, 342 (S.D.N.Y. 2005).

---

[8] In deference to the Second Circuit's summary order in the matter of *Chowdhury v. Hamza Express Food Corp, et al.*, No 15-3142 (2d Cir. Dec. 7, 2016), which declined to award plaintiffs liquidated damages under both the FLSA and NYLL, Plaintiffs only ask the Court for liquidated damages under the NYLL.

[9] Under the FLSA, "[t]o establish the requisite subjective 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Hart*, 967 F. Supp. 2d at 938 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp*, 537 F.3d at 150). The burden to prove good faith is "a difficult one." *Id.*

35. Here, Defendants have not identified specific active steps they took to ascertain what the NYLL required of them, and to comply with those requirements. Indeed, Defendants: (1) kept no employment records for Plaintiff; (2) failed to pay Plaintiff (and one of Defendants' witnesses) overtime; (3) failed to even discuss overtime with Plaintiff; (4) and failed to correct wage violations even after being sued by the Department of Labor. Because Defendants failed to demonstrate that they acted in good faith, Plaintiff is entitled to recover liquidated damages under the NYLL.

Prejudgment Interest

36. Under New York law, the Court may award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award of back pay. *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *27 ("courts typically award prejudgment interest on damages for NYLL violations"); *Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (Sup. Ct. N.Y. C'ty 1997). This is because under New York (and federal) law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money. *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *Reilly v. Natwest Mkts. Group,* 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000).

37. In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is because under New York law liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages. *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981).

14

38. The New York prejudgment interest rate applies. *McLean*, 2012 U.S. Dist. LEXIS 55425 at *28. Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest. *Id.* As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *28 ("prejudgment interest on the plaintiffs' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date"). Thus, prejudgment interest on Plaintiff's back pay award should be granted, and should be computed from the median of each relevant period to the date of judgment.

<u>Statute of Limitations</u>

39. The statute of limitations under the FLSA is two years from the filing of the Complaint. 29 U.S.C. §255(a). The Complaint was filed July 16, 2015.

40. The statute of limitations for claims brought under the NYLL is six years. N.Y. Lab. Law § 663(3).

41. Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Plaintiff may therefore recover unpaid overtime wages under New York state law for the period from and after July 16, 2009.

<u>Attorneys' Fees and Costs</u>

42. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition

to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court"). Accordingly, Plaintiff should be awarded attorneys' fees and costs in an amount to be determined after trial.

<u>Damages Owed to Plaintiff Juan Pena Bustamente</u>

43.     Juan Pena was employed by Defendants from approximately 2005 until June 27, 2015. For purposes of this action, only his employment after July 16, 2009 is considered.

44.     From approximately June 2009 to approximately July 2010, Juan Pena worked for Defendants from approximately 10:00 p.m. until on or about 5:00 a.m., six days a week (typically 42 hours per week). (Transcript at 7:13-16)

45.     From approximately July 2010 to approximately December 2012, Juan Pena worked for Defendants from approximately 10:00 p.m. until on or about 5:00 a.m., seven days a week (typically 49 hours per week). (Transcript at 8:22-9:3)

46.     From approximately December 2012 until June 27, 2015, Juan Pena worked for Defendants from approximately 4:00 p.m. until on or about 4:00 a.m., seven days a week (typically 84 hours per week). (Transcript at 9:3-8)

47.     Throughout his employment with Defendants, Juan Pena would take approximately ten minutes during each shift for a cigarette break. (Transcript at 9:22-10:5)[10]

48.     At all times during his employment, Juan Pena was paid in cash. (Transcript 11:10-11)

49.     From approximately June 2009 to approximately July 2010, Juan Pena was paid a fixed weekly salary of $600 per week. (Transcript 10:22-11:9)

---

[10] Plaintiff took approximately one hour of breaks a week to smoke cigarettes. These breaks have been accounted for in the damages chart ennexed hereto.

50. From approximately July 2010 to approximately December 2012, Juan Pena was paid a fixed weekly salary of $700 per week. (Transcript 11:4-20)

51. From approximately December 2012 to approximately June 27, 2015, Juan Pena was paid a fixed weekly salary of $1,050 per week. (Transcript 11:16-12:6)

52. Juan Pena did not receive pay at the appropriate overtime rate for overtime hours worked.

53. The proper damages calculation for Plaintiff is contained within Exhibit A. Exhibit A applies the federal and New York state law described *supra*.

54. Defendants Uno Café & Billiards Inc., NY Cantaoke Inc. and Yangkey Kim, as employers, are liable to Plaintiff for damages concerning the relevant period of Plaintiff's employment.

55. Accordingly, Defendants are liable to Juan Pena for unpaid overtime wages in the amount of $246,463.13. (Ex. A)

56. Defendants are liable to Juan Pena for liquidated damages and pre-judgment interest under the NYLL for unpaid overtime in the amount of $239,600.63 and 97,863.70, respectively. (Ex. A)

57. Defendants are liable to Juan Pena for spread of hours wages in the amount of 7,082.25. (Ex. A)

58. Defendants are liable to Juan Pena for liquidated damages and pre-judgment interest on spread of hours wages in the amount of $7,082.25 and 2,597.49, respectively. (Ex. A)

59. Defendants are liable to Juan Pena for damages of $5,000 for Defendants' failure to provide an annual notice of wage rate. NYLL §§195(1), 198(1-b) (Ex. A Damages Chart)

60. Defendants are liable to Juan Pena for damages of $5,000 for Defendants' failure to provide him with a wage statement with each payment of wages. NYLL §§195(3), 198(1-d). (Ex. A Damages Chart)

61. Defendants are liable to Plaintiff Juan Pena's attorneys for attorneys' fees, in an amount to be determined following judgment.

Dated: New York, New York
May 11, 2018

   /s/ Jesse S. Barton, Esq.
Jesse S. Barton, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, NY 10165
(212) 317-1200
jbarton@faillacelaw.com
*Attorneys for Plaintiff*