```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JUAN CARLOS PENA BUSTAMENTE,
individually and on behalf of others              FINDINGS OF FACT AND
similarly situated,                               CONCLUSIONS OF LAW
                                                  1:15-cv-04192-FB-RML
                Plaintiff,

        -against-

UNO CAFÉ & BILLIARDS INC. doing
business as Uno Café & Billiards, NY
CANTAOKE INC. doing business as Amor
Karaoke & Bar, and YANGKEY KIM,

                Defendants.
------------------------------------------------------x
```

*Appearances:*

| | |
|---|---|
| *For the Plaintiff:* | *For the Defendants:* |
| JESSE S. BARTON | GREGORY NICHOLAS FILOSA |
| MICHAEL A. FAILLACE | ARIEL YIGAL GRAFF |
| Michael Faillace & Associates, PC | Filosa Graff LLP |
| 60 East 42nd Street, Suite 2020 | 111 John Street, Suite 2510 |
| New York, NY 10165 | New York, NY 10038 |

**BLOCK, Senior District Judge:**

Plaintiff Juan Carlos Pena Bustamente ("Pena") sued Defendants Uno Café & Billiards Inc., d/b/a Uno Café & Billiards ("Uno"); NY Cantaoke Inc., d/b/a Amor Karaoke & Bar ("Amor"); and Yangkey Kim ("Kim") under the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") claiming unpaid overtime, a violation of wage notice and statement requirements, and a spread-of-hours violation. The Court held a bench trial on March 20, 2018. Based on the

following combined findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, the Court finds Defendants not liable on the spread of hours claim and liable on the remaining claims in the amount of $147,095.33, including prejudgment interest.[1]

Defendants Uno and Amor are located on separate levels of a building in the Jackson Heights neighborhood of Queens, New York. Amor is on the first floor, and Uno the second floor. Defendant Kim was one of the owners of Uno and Amor. He managed both businesses and made personnel decisions, including hiring and firing of employees, payment of wages, and management and supervision of all employees.

Pena worked for Uno and Amor from sometime in 2005 until June 27, 2015 as a security guard and, later, as a manager of several slot machines. Defendants never provided Pena with notice regarding wages, compensation, or any related matter. Defendants never provided Pena with any statement regarding hours worked, overtime hours, or wages earned.

From June 2009 to July 2010, Pena worked as a security guard from approximately 10:00 p.m. to 5:00 a.m., six days per week, for a total of 42 hours per week.[2] During that time, he was paid $600 weekly. From July 2010 to December

---

[1] Pena also asserted a claim to recover equipment costs but produced no evidence in support of that claim at trial. The Court therefore dismisses the claim.

[2] Defendants attempted to contradict Pena's testimony regarding his hours during this period with testimony that Uno and Amor closed at 4:00 a.m. and that another security guard never worked

2013, he continued to work as a security guard, but his schedule and hours changed. At that time, he worked seven days per week from 10:00 p.m. to 5:00 a.m., for a weekly total of 49 hours, and was paid $700 each week.[3]

Sometime before 2014, Kim leased several slot machines from a third party and installed them in Uno Café for the use and entertainment of patrons. Until January 2014, a cashier, non-party Hyeong Gyoo Jang, oversaw the machines and made cash payments to customers who won. In January 2014, Jang was arrested for operating the slot machines, and Pena began managing them instead, with a corresponding increase in hours and pay. For the first four weeks, he worked daily from 4:00 p.m. to 4:00 a.m., earning $1,050 per week for a total of 84 hours worked. After the first four weeks, he worked 8:00 p.m. to 2:00 a.m. daily, earning $1,050 per week for 42 hours of work.[4] He maintained that schedule until he was dismissed on June 27, 2015.

---

past 4:00 a.m. This testimony was insufficient to rebut Pena's testimony. Even if the businesses closed to the public at 4:00 a.m., it is reasonable to infer that employees, including Pena, would remain for some time thereafter to clean and perform other tasks. That another security guard worked different hours proves nothing about Pena's hours.

[3] Although Pena testified that he began managing the slot machines in December 2012, the Court credits testimony that a cashier managed the slot machines until the cashier was arrested for it in January 2014.

[4] Pena testified that he worked from 4:00 p.m. to 4:00 a.m. every day without exception. However, the Court finds that his actual hours were reduced based on credible testimony from his coworkers that he almost never arrived before 7:00 p.m. or later and typically left before 4:00 a.m. Given the imprecise nature of the testimony given by Pena's coworkers and the absence of records, the Court's finding is necessarily approximate.

3

Kim did not require Pena to notify him when he started or ended his shift, although Kim sometimes asked other employees about Pena's hours. Pena occasionally paid other employees to fill in for him managing the slot machines, and Kim did not object.

When Pena managed the slot machines, Kim supplied him with $20,000 per week from which to make customer payouts. At the end of each workday, Pena collected money from the machines and placed it in a safe in Kim's office. He also maintained a ledger of customer payouts and amounts removed from each machine. At the end of the week, he showed Kim the ledger book and gave him the earnings from the machines. Kim split the profits with the company from whom he leased the machines.

On June 26, 2015, police destroyed the slot machines.

**I. Employee Status**

As an initial matter, the Court rejects Defendants' argument that Pena did not qualify as a covered employee under the FLSA and NYLL after he started managing the slot machines.

Employee status under the NYLL depends on whether the worker "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."

*Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (N.Y. 2003). The "critical inquiry . . . pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id.*

Here, the evidence shows that Kim controlled the results produced and the means of producing them. Kim provided the slot machines and the money Pena used to pay winning customers. Kim also required Pena to give a weekly accounting. Kim thus exerted an amount of control inconsistent with independent contractor status.

Application of the factors also shows that Pena was an employee. First, although Kim was not strict about Pena's hours, Pena was not free to perform the work whenever he wished. He was required to manage the machines from 4:00 p.m. to 4:00 a.m., when they were in highest demand. If he were unable to do so, he was responsible for finding someone to fill in. The second and third factors are indeterminate, because there was no testimony regarding whether Pena was free to engage in other employment or received fringe benefits. However, the fourth and fifth factors favor employment status: Pena was on Kim's payroll and on a fixed schedule, even if he did not always keep his scheduled hours.

For the same reasons, the Court concludes, based on the totality of the circumstances, that Pena qualified as an employee under the FLSA. *Saleem v. Corp.*

*Transportation Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (stating that, in assessing employment status under the FLSA, the Court considers the "totality of the circumstances" and focuses on "whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or are in business for themselves").

**II. Wage Statement and Wage Notice Claims**

Under the NYLL, an employer must provide wage and hour notices informing the employees of the rate and basis of pay and other pertinent information. N.Y. Lab. Law § 195(1)(a). An employee who does not receive such notice is entitled to damages of $50 per day up to a total of $5,000. *Id.* § 198(1-b).

Similarly, the employer must provide wage statements each time the employee is paid. The statement must include the rate and basis of pay, the time period covered by the payment, applicable deductions, the rate of overtime pay, and the number of overtime hours worked. *Id.* § 195(3). Failure to receive such statements entitles an employee to damages of $250 per day up to a total of $5,000. *Id.* § 198(1-d).

Here, Defendants concede that they did not provide the required wage notice or wage statements. For each violation, Pena is entitled to the statutory maximum damages of $5,000. Thus, for Pena's wage notice and statement claims under the NYLL, the Court awards $10,000 plus costs and reasonable attorney's fees. *See* N.Y.

Lab. Law §§ 198(1-b), (1-d).

**III. Overtime Claim**

Under the FLSA, an employee who works overtime must be paid 1.5 times the regular rate of pay for any hours worked in excess of a forty-hour work week. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). The NYLL incorporates the FLSA's overtime pay requirement. *Id.* (citing N.Y.C.R.R. § 142-2.2).

Where, as here, an employer fails to keep records of overtime hours worked, an employee must introduce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). An employee may satisfy that burden "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods*, 136 S. Ct. at 1047.

Where an employee receives a weekly salary, the regular rate of pay is calculated by dividing the weekly salary by forty. 29 C.F.R. § 778.109; 29 U.S.C.

§ 207(e); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (rebuttable presumption that weekly pay represents the first 40 hours worked and does not include overtime); 12 N.Y.C.R.R. § 146-3.5 (applying same calculation method under NYLL).

Under the NYLL, a plaintiff may recover liquidated damages unless the employer establishes a good faith basis for believing his underpayment of wages was legal. *See Rios v. B B Q Chicken Don Alex, Inc.*, 2018 WL 264512, at *6 n.5 (E.D.N.Y. Jan. 2, 2018) (citing N.Y. Lab. Law § 198(1-a)). Prior to April 9, 2011, the measure of liquidated damages was 25% of total unpaid wages. *Pinovi v. FDD Enterprises, Inc.*, 2015 WL 4126872, at *6 (S.D.N.Y. July 8, 2015) (citing N.Y. Lab. Law §§ 198(1-a), 663(1). However, with an amendment effective April 9, 2011, liquidated damages equal 100% unpaid wages.

Here, as Defendants admit, they put forth no evidence supporting a good-faith belief that the nonpayment of overtime wages was legal. Liquidated damages are therefore appropriate in the amounts calculated below.

### A. First Period: July 16, 2009 to July 17, 2010[5]

During this 52-week period, Pena worked two hours of unpaid overtime each

---

[5] The NYLL has a six-year statute of limitations. N.Y. Lab. Law § 663(3). The Complaint was filed on July 16, 2015; the Court therefore disregards as time-barred all hours worked prior to July 16, 2009. For this claim and those that follow, the testimony specified months but not precise dates. The Court chose the dates within the specified months for the sake of convenience.

week. His regular rate of pay was $15/hour ($600/40), making his overtime rate of pay $22.50/hour ($15 x 1.5). For 104 hours of overtime, Pena's unpaid overtime wages are $2,340 ($22.50 x 104). He is entitled to compensatory damages in that amount. He is also entitled to liquidated damages for this period totaling $585 ($2,340 x .25).

### B. Second Period: July 18, 2010 to December 31, 2013

Pena worked 9 hours of unpaid overtime each week for 180 weeks. His overtime rate was $26.25 ($700/40 x 1.5). For 1,620 hours of overtime, his unpaid overtime totals $42,525 (1,620 x $26.25), for which he is entitled to compensatory damages.

His liquidated damages during this period require two separate calculations due to the amendment on April 9, 2011, discussed above. For the 38 weeks, or 342 hours, of overtime accrued prior to that date, Pena is entitled to liquidated damages of $2,244.38 (342 x $26.25 x .25). For the 142 weeks, or 1,278 hours, of overtime after that date, he is entitled to $33,547.50 in liquidated damages (1,278 x $26.25).

### C. Third Period: January 1, 2014 to January 28, 2014

For the first four weeks that Pena managed the slot machines, he worked 44 hours of unpaid overtime each week for a total of 176 hours. His regular rate of pay was $26.25 ($1,050 / 40). At an overtime rate of $39.38 per hour ($1,050/40 x 1.5),

his unpaid overtime wages were $6,930.88 (176 x $39.38). He is entitled to both compensatory damages and liquidated damages in that amount.[6]

**D. Fourth Period: January 29, 2014 to June 26, 2015**

For the final 73 weeks of his employment, Pena worked unpaid overtime of 2 hours per week for a total of 146 hours. At an hourly overtime rate of $39.38, Pena is entitled to compensatory damages of $5,749.48. He is entitled to liquidated damages in the same amount.

**E. Summary of Overtime Damages**

The following table summarizes Pena's compensatory and liquidated damages for each period of unpaid overtime.

**TABLE 1**

|    | TIME PERIOD | OT HOURS | OT RATE | COMPENSATORY DAMAGES | LIQUIDATED DAMAGES |
|----|-------------|----------|---------|----------------------|--------------------|
| 1  | 7/16/2009 to 7/17/2010 | 104 | $22.50 | $2,340 | $585 |
| 2a | 7/18/2010 to 4/8/2011 | 342 | $26.25 | $8,977.50 | $2,244.38 |
| 2b | 4/9/2011 to 12/31/2013 | 1,278 | $26.25 | $33,547.50 | $33,547.50 |
| 3  | 1/1/2014 to 1/28/2014 | 44 | $39.38 | $6,930.88 | $6,930.88 |
| 4  | 1/29/2014 to 6/26/2015 | 146 | $39.38 | $5,749.48 | $5,749.48 |
|    |             |          | TOTALS: | **$57,545.36** | **$49,057.24** |

---

[6] The Court acknowledges that public policy may weigh against allowing recovery of wages earned in service to an illegal gambling operation. However, neither party raised the issue, and courts typically decline to limit recovery under similar circumstances. *See, e.g.*, *Kennedy v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1189-90 (D. Colo. 2018) (illegal marijuana worker covered by FLSA); *Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338, 358-59 (N.Y. 2006) (illegal immigrants covered by NYLL).

## IV. Spread of Hours Claim

Pena has failed to establish a spread of hours claim.

Under NYLL, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required herein for any day in which . . . the spread of hours exceeds 10 hours." *Rios*, at *5 (citing 12 N.Y.C.R.R. § 142-2.4).

Although Pena's hours during the Third Period exceeded 10 hours per day, the spread of hours requirement is "inapplicable to an employee who makes over the minimum wage." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 389 (E.D.N.Y. 2012). Pena's regular rate of pay during the Third Period was $26.25, well above the minimum wage.

## V. Prejudgment Interest

Pursuant to N.Y. Civil Practice Law and Rules § 5001(a), Pena is entitled to prejudgment interest on his unpaid overtime wages "to compensate [him] for the loss of use of money." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (quoting *Chandler v. Bombardier Capital Inc.*, 44 F.3d 80, 83 (2d Cir.1994)). Because the unpaid wages due became due at different times, the Court picks a "reasonable intermediate" date of July 5, 2012, half way through the period at issue, from which to calculate prejudgment interest. *Id.*; N.Y. CPLR § 5001(b). Interest

shall accrue from that date on Pena's unpaid overtime wages at a rate of 9% per year until the date of judgment. N.Y. CPLR § 5004; *McLean v. Garage Mgmt. Corp.*, 2012 WL 1358739, at *11 (S.D.N.Y. Apr. 19, 2012).

## CONCLUSION

Pena is awarded damages of $147,095.33, consisting of the following amounts: $10,000 for his wage notice and wage statement claims; compensatory damages of $57,545.36 plus prejudgment interest of $30,492.73 (9% per year since July 5, 2012); and liquidated damages of $49,057.24. Pena is further entitled to costs and reasonable attorney's fees.[7]

**SO ORDERED**

                                            /S/ Frederic Block
                                            FREDERIC BLOCK
                                            Senior United States District Judge

Brooklyn, New York
May 23, 2018

---

[7] The parties shall endeavor reach an agreement on attorney's fees within 30 days of entry of this order to avoid unnecessary litigation on these "collateral issues." *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 2017 WL 1901969, at *6 (S.D.N.Y. May 9, 2017) (citing *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 170 (1939)). If they fail to reach an agreement, Plaintiff may make an application to the Court.